UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STATE FARM FIRE & CASUALTY COMPANY,  Plaintiff,  v.  GEORGE STUBY and JENNIFER MARTINEZ,  Defendants. | CIVIL ACTION NO. 3:21-cv-02050  (SAPORITO, J.) |

### MEMORANDUM

In this diversity action, the plaintiff, State Farm Fire & Casualty Company, seeks to hold the defendants, George Stuby and Jennifer Martinez, liable for negligence. The defendants leased a residential property in Blakeslee, Pennsylvania, owned by Stuart Lakernick and insured by State Farm. In the early hours of September 15, 2020, the property was substantially damaged or destroyed by a fire, resulting in damages in excess of $230,000. Exercising its subrogation rights, State Farm now seeks to recover from the defendants the money it paid to its insured, Lakernick.

State Farm contends that the fire was caused by the defendants' negligent and careless use of a candle or candles. The parties completed

discovery some time ago, and we have already considered and denied a pair of parallel motions for summary judgment filed by the defendants, who are separately represented. *See State Farm Fire & Cas. Co. v. Stuby*, No. 3:21-cv-02050, 2024 WL 922986 (M.D. Pa. Mar. 4, 2024).

While that earlier set of summary judgment motions was pending before the court, however, Stuby filed a motion for leave to file a supplemental brief, highlighting a then-pending state court appeal in a subrogation action by an insurer against its insured's tenants, which involved a similar fire arising out of the tenants' alleged negligent use of candles. A December 2023 panel decision in that state appeal held that, under the terms of their lease, the tenants were implied co-insureds under the landlord's property insurance policy, and thus the insurer-plaintiff was precluded from presenting a subrogation claim against them, but the appellate court then granted a petition for rehearing en banc. We denied the defendants' original set of summary judgment motions in this case, but stayed this action pending resolution of that state court appeal. In July 2024, the state appellate court granted an application by the appellant-insurer to discontinue the en banc appeal, and it reinstated the original panel decision. *See generally id.* at 3 n.6;

*Mut. Benefit Ins. Co. v. Koser*, No. 1340 MDA 2022, 2023 WL 8360563 (Pa. Super. Ct. Dec. 4, 2023), *vacated per curiam and en banc reh'g granted*, 2024 WL 174472 (Pa. Super. Ct. Jan. 17, 2024), *reinstated and superseded by* 318 A.3d 937 (Pa. Super. Ct. 2024).

Shortly after the *Koser* decision became final, the stay of this action was lifted. With leave of court, *see* Doc. 41, the defendants filed a second set of parallel motions for summary judgment, limited to arguments that, under *Koser* and other state court decisions, and in light of the terms of their lease, they too were implied co-insureds under their landlord's property insurance policy, and thus State Farm was precluded from maintaining subrogation claims against them. Doc. 39; Doc. 42. Those motions are fully briefed and ripe for decision. *See* Doc. 43; Doc. 44; Doc. 45; Doc. 46.

The material facts with respect to the instant summary judgment motions are undisputed.[1] Although the copy they retained was unsigned, the defendants have submitted identical copies of the original written

---

[1] The details of the fire itself were summarized in our prior decision denying the first round of summary judgment motions. *See Stuby*, 2024 WL 922986, at *1–*2. Those facts, however, are not material to the more limited scope of this second set of summary judgment motions.

lease they entered into with Lakernick in July 2014. Stuby Ex. E, Doc. 43, at 37–38; Martinez Ex. E, Doc. 44, at 35–36. The plaintiff has not disputed the authenticity of this document, nor otherwise objected to its consideration.

The lease provided for an initial term of three years, renewing for successive terms of twelve months each. Stuby Ex. E, at 1; Martinez Ex. E, at 1. It expressly provided that the two-page lease "constitute[d] the entire agreement" between landlord and tenants, disclaiming any oral representations before or after the lease's execution, and it provided that any changes or modifications to the lease would require the express written permission of the landlord. Stuby Ex. E, at 2; Martinez Ex. E, at 2. No other written lease or agreement modifying the initial lease was ever executed by the defendants and Lakernick.

With respect to damage to the property, the lease provided, in relevant part:

> The Tenant(s) is required to deposit a security deposit against damages in the amount of $1,500 with the Landlord(s) rental Agency, to guarantee against loss or damage to the rental property and its contents thereof [sic]. . . . Additionally, any damage incurred during the Tenant(s) stay shall be the sole responsibility of the Tenant(s), the Landlord shall notify the Tenant(s) of the damage and said costs shall be deducted from the

>  security deposit and any additional [sic] not covered by the Security Deposit, shall be borne by the Tenant(s). . . . It is further understood that the Landlord is not responsible nor liable for any injury or damages to any person(s) or to any property at any time or for any cause that might arise from the use of said premises or building or by any act of any person(s) or their guests who are occupying said premises for the term of this lease agreement. . . .

Stuby Ex. E, at 2; Martinez Ex. E, at 2. The lease makes no reference whatsoever to any obligation to maintain property insurance coverage by either the landlord or the tenants.

As noted above, this is a subrogation action. "Subrogation is an equitable doctrine intended to place the ultimate burden of a debt upon the party primarily responsible for the loss." *Joella v. Cole*, 221 A.3d 674, 677 (Pa. Super. Ct. 2019); *see also Westminster Am. Ins. Co. v. Bond*, 307 A.3d 749, 752 (Pa. Super. Ct. 2023) (quoting *Joella*, 221 A.3d at 677). "An insurance company, however, may not file a subrogation action against a party to whom the insurance company owes a duty, such as the insurance company's own insured." *Bond*, 307 A.3d at 72 (citing *Remy v. Michael D's Carpet Outlets*, 571 A.2d 446, 452 (Pa. Super. Ct. 1990)); *see also Remy*, 571 A.2d at 452 ("By definition, subrogation can arise only with respect to the rights of an insured against third persons to whom the

insurer owes no duty. It follows and, indeed, is now well established that an insurer cannot recover by means of subrogation against its own insured.") (citation omitted); *Mut. Benefit Ins. Co. v. Koser*, 318 A.3d 937, 941 (Pa. Super. Ct. 2024) (quoting *Remy*, 571 A.2d at 452).

> In a landlord-tenant relationship, absent a lease provision to the contrary, a tenant is generally liable in tort to its landlord for damages to the leased property caused by the tenant's negligence. However, when the landlord has procured insurance for its property, the issue then becomes whether the property insurer can file a subrogation claim against the tenant when the tenant negligently caused damages.

*Joella*, 221 A.3d at 677 (citation omitted); *see also Koser*, 318 A.3d at 942 (quoting *Joella*, 221 A.3d at 677).

The moving defendants do not contend that they are named or additional insureds under the landlord's property insurance policy.[2] But "the courts have created a legal fiction that permits a tenant, for purposes of a subrogation claim, to be considered a 'co-insured' under a landlord's fire insurance policy for the property." *Bond*, 307 A.3d at 752. In Pennsylvania, courts have adopted a "case-by-case approach where courts determine the availability of subrogation based on the reasonable

---

[2] Indeed, the policy itself has not been submitted into the record as an exhibit to any filing.

- 6 -

expectations of the parties as expressed in the lease under the facts of each case." *Joella*, 221 A.3d at 678; *see also Koser*, 318 A.3d at 942 (citing *Joella*, 221 A.3d at 679). "In particular, courts focus on whether the explicit language of the lease is such that it is reasonable to infer that the landlord communicated to the tenant that the landlord will obtain fire insurance for the property and the landlord, and not the tenant, will be responsible for losses to the property as a result of fire." *Bond*, 307 A.3d at 752–53 (citing *Joella*, 221 A.3d at 678). As the state appellate court has further explained:

> If, under the lease or by some other commitment, the landlord has communicated to the tenant an express or implied agreement to maintain fire insurance on the leased premises, absent some compelling provision to the contrary, the court may properly conclude that, notwithstanding a general "surrender in good condition" or "liability for negligence" clause in the lease, their reasonable expectation was that the landlord would look only to the policy, and not to the tenant, for compensation for fire loss covered by the policy. That expectation would constitute an implied commitment in the lease to relieve the tenant of liability to the extent of the policy coverage and it, too, would therefore preclude a subrogation claim.

*Joella*, 221 A.3d at 680 (quoting *Rausch v. Allstate Ins. Co.*, 882 A.2d 801, 816 (Md. 2005)); *see also Koser*, 318 A.3d at 943–44 (quoting *Joella*, 221 A.3d at 680); *Bond*, 307 A.3d at 753 (same).

The defendants argue that the facts of this case are "eerily similar" to those underlying the *Koser* decision, in which the Superior Court of Pennsylvania found that that the *Koser* tenants were implied co-insureds under their landlord's insurance policy, and thus the insurer could not maintain a subrogation action against the tenants. *See* Stuby Br. Supp. 3, Doc. 43; *see also* Martinez Br. Supp. 4 ("*Koser* is both factually and legally similar to . . . the instant Case."), Doc. 44. But, although *Koser* similarly involved a residential fire allegedly caused by the tenants' failure to extinguish or monitor a burning candle, *see Koser*, 318 A.3d at 939, the lease in *Koser* differed materially from the lease in this case. The lease in *Koser* expressly obligated the landlord to "maintain appropriate insurance" coverage for the premises and any personal property of the landlord located there. *See id.* at 946 (quoting policy language); *id.* at 948 ("[W]e read the lease to require Landlord to insure the Premises and his personal property located on the Premises, and for Tenants to insure their personal property located on the Premises."). Based on this express agreement by the landlord to provide fire insurance for the premises and his own personal property located there, read together with the terms of the entire lease agreement, the *Koser* court found that, "[u]nder the lease,

it was reasonable for Tenants to expect that Landlord would look only to the Policy for compensation for fire loss covered by the Policy," and therefore "Tenants are implied co-insureds under the Policy, and [the insurer] is precluded from presenting a subrogation claim against them." *Id.* at 949–50. By contrast, the lease in this case is entirely silent on the matter of property insurance coverage, and its only provisions with respect to damage to the premises explicitly placed "sole responsibility" for such damage on the tenants.

The defendants also point to the Superior Court's earlier *Joella* decision, which is similarly inapposite. *See* Stuby Br. Supp. 4–5; Martinez Br. Supp. 5–6. In *Joella*, a landlord's insurer brought a subrogation action alleging that a tenant's negligent use of an extension cord caused a fire resulting in extensive damage to the leased premises. *See Joella*, 221 A.3d at 676. The *Joella* "lease specifically state[d] that Landlord would obtain insurance for the building and that Tenant had the right to maintain her own insurance to cover her personal possessions." *See id.* at 681. Based on this language, read together with all other provisions of the lease, the *Joella* court concluded that it was reasonable for the tenant to expect that she would be a co-insured under the terms of the lease for

any damage caused to the premises, and thus the insurer could not maintain a subrogation action against the tenant. *See id.* at 680–81.

The lease in this case, however, is more like those at issue in *Bond* and *Remy*—it is entirely silent on the subject of insurance. *See Bond*, 307 A.3d at 753 ("[T]he Leases in this case are silent about the Landlord's obligation to obtain fire insurance on the Property . . . ."); *id.* ("[T]o consider the tenant a 'co-insured' under the policy, the court in *Remy* held that the lease must *affirmatively* require the landlord to obtain fire insurance . . . .") (emphasis added); *Remy*, 571 A.2d at 448 ("The provisions of the lease . . . did not require Kimco, the landlord, to purchase fire insurance for the protection of Michael D's, the tenant."). Considering the terms of the lease in this case in its entirety, we find that a clear and unambiguous interpretation of the lease is that it did not require the landlord, Lakernick, to obtain fire insurance on the property. *See Bond*, 307 A.3d at 754. "Without a written obligation as a threshold matter," we cannot conclude that the lease "reasonably communicated" to the tenants, Stuby and Martinez, that the landlord would obtain fire insurance on the premises and not look to the tenants for losses to the premises from a fire. *See id.* "In fact, a reasonable interpretation of the

- 10 -

Lease[] is that the Landlord has no obligation to obtain fire insurance for the Property and would, in fact, look to the Tenants for any losses from the fire." *Id.*

Accordingly, "given the Lease['s] silence on Landlord's obligation to obtain and maintain fire insurance on the Premises, Tenants had no reasonable expectation that they were 'co-insureds' on the fire insurance policy that [State Farm] issued," and thus State Farm is not "precluded as a matter of law from pursuing a subrogation claim against Tenants," Stuby and Martinez. *Id.*

For the foregoing reasons, the defendants' motions for summary judgment (Doc. 39; Doc. 42) will be denied, and this matter will be set down for trial.

An appropriate order follows.

Dated: September 8, 2025        *s/Joseph F. Saporito, Jr.*
                                JOSEPH F. SAPORITO, JR.
                                United States District Judge